IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERRY NORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2:21-cv-291 |
| NLMK PENNSYLVANIA LLC D/B/A | ) | |
| SHARON COATING LLC | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Sherry Norris ("Plaintiff"), through her undersigned counsel, brings this complaint against Defendant, NLMK Pennsylvania LLC d/b/a Sharon Coating LLC ("Defendant"), and asserts as follows:

## INTRODUCTION

1. Plaintiff Sherry Norris, a long-time employee of Defendant, was harassed mercilessly by her co-workers and discriminated against by management. After years of service to Defendant, Plaintiff was terminated for reporting the hostile conduct and actions taken against her by Defendant.

2. Defendant discriminated against Plaintiff by subjecting her to a hostile work environment, failing to take remedial actions to prevent harassment, subjecting Plaintiff to heightened discipline, and ultimately terminating Plaintiff's employment for engaging in protected activities under federal and state law. Accordingly, Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"), 29 C.F.R. §

1604.11, and the Pennsylvania Human Relations Act ("PHRA"), as amended, 43 PA. CONS. STAT. §§ 951-63 alleging harassment and discrimination because of her sex and retaliation for engaging in protected activities.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over the Title VII claims asserted herein pursuant to 28 U.S.C. §§ 1331 and 1343(3), (4).

4. This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the PHRA, as such claims arise out of the same nucleus of operative facts as Plaintiff's Title VII claims.

5. This Court also has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

7. All conditions precedent to the institution of this suit have been fulfilled and Plaintiff has satisfied all jurisdictional prerequisites for the maintenance of this action. On December 3, 2020, a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC"), and this action has been filed within ninety (90) days of said notice.

## PARTIES

8. Plaintiff is a female and citizen of the State of Ohio. Plaintiff was employed by Defendant from June 2003 until September 2018.

9. Defendant is a Pennsylvania company who, at all relevant times herein, operates a galvanized steel mill in Mercer County at 277 North Sharpsville Ave, Sharon, Pennsylvania 16146.

10. At all relevant times, Defendant has continuously been, and is now doing business, in the Commonwealth of Pennsylvania and has continuously employed at least fifteen (15) employees.

11. At all times material herein, Defendant is and has been a "person" within the meaning of 42 U.S.C. § 2000e(a) and 43 PA. CONS. STAT. § 954(a) and an "employer" withing the meaning of 42 U.S.C. § 2000e(b) and 43 PA. CONS. STAT. § 954(b).

## FACTUAL ALLEGATIONS

12. Plaintiff was hired by Defendant as a Laborer on June 3, 2003 and was later promoted to a Shipper by the Defendant. Plaintiff remained in the Defendant's employment until she was unlawfully terminated on September 28, 2018.

13. On information and belief, while Plaintiff worked in Defendant's Shipping Department, Plaintiff was the only female in the department. Plaintiff's work area was referred to as "C Door."

14. Plaintiff dual filed three separate complaints with the EEOC and PHRC, which are discussed at length below.

### Actions Leading to the Filing of the First EEOC/PHRC Complaint

15. From January 2014 until September 2018, Plaintiff was harassed by Mike Confer, Lead Shipper, and other male coworkers because of her sex. The harassment was pervasive and continuous, occurring at all hours of Plaintiff's shifts.

16. Despite Plaintiff's constant complaints to management, Defendant failed to take her complaints seriously and refused to take remedial actions to stop and/or prevent it.

17. Plaintiff made her first complaint of harassment to Scott Bishop, Director of Operations, in May 2014. Mr. Bishop referred her to Wayne Bontempo, Plant Manager. Mr. Bontempo took notes and accepted her evidence, but no disciplinary action was taken at that time.

18. Thereafter, Plaintiff continued to be subject to harassment and continued to make complaints regarding that harassment. She made these complaints to John Bosley, Plant Production Supervisor.

19. Mr. Bosley was present at the time of several incidents of harassment by Mr. Confer, including Mr. Confer referring to Plaintiff as a "retard" and making derogatory comments about her sex. Mr. Bosley reported Plaintiff's complaints to upper management.

20. Mr. Confer and other male coworkers referred to Plaintiff as a "bitch," "snitch," "retard," "mentally challenged," and stated that she was unable to do her job because she was a female and that females should not work there. These statements were made in the presence of customers, coworkers, and management.

21. Mr. Confer intentionally made mistakes on the Custom Shipping Load Sheets that were prepared specifically for Plaintiff's shifts. These sheets were always correct when Mr. Confer prepared them for a male coworker.

22. Mr. Confer created mistakes with coils and other preparation tasks which made it difficult for Plaintiff to complete her job duties efficiently and in a timely manner. Notably, he did not create these obstacles for any of the male coworkers. Mr. Confer's actions included:

a. On or around March 6, 2015, Plaintiff staged coils for the following Monday's day shift. When Mr. Confer came out to mark off the coils, he refused. As a result, Plaintiff had to get a different Lead Shipper to sign off on the staged coils;

b. On or around May 13, 2015, Mr. Confer marked up the wrong coils the night before Plaintiff's shift in Plaintiff's work area;

c. On or around June 10, 2015, Mr. Confer placed the coils on the floor in such a manner that the Plaintiff was unable to reach them with a crane;

d. On or around June 15, 2015, Mr. Confer place coils in the wrong location so Plaintiff was unable to locate them; and

e. On or around June 24, 2015, Mr. Confer failed to mark coils in the Plaintiff's area that were to be pulled for the following day until 10:00 p.m. This made it difficult for Plaintiff to complete her work.

23. Mr. Confer regularly posted derogatory comments about Plaintiff on his public Facebook page that were viewed by coworkers further creating a tense work environment. Mr. Confer referred to Plaintiff as: "This is so the Bitch I work with lol," "[S]he's just a cold turd on a paper plate;" "[T]he snitch Bitch, Long Leg, flat chested, turkey neck I work with," "I wish this would happen to the snitch Bitch that I'm working with. I know it's not right to make fun of the mentally challenged but there has to be some inbreeding to be that fucked up."

24. Mr. Confer regularly made negative comments about Plaintiff to various drivers, encouraged them to not talk to Plaintiff, and made fun of the drivers if they did talk to Plaintiff.

25. Mr. Confer regularly fabricated stories and blamed situations on Plaintiff to stir the pot, including related to her sex. For example, Mr. Confer falsely told coworkers that Plaintiff submitted a complaint about an employee, Bill Levitt, for not cleaning the women's bathroom.

26. Two months after Plaintiff first complained to Defendant (i.e., at the end of July 2014), Mr. Confer was placed on a five-day suspension while an investigation of Plaintiff's complaints was conducted. Mr. Confer's suspension notice stated that he was suspended for

5

"harassment of a fellow employee. Engaging in activities that would create a hostile work environment."

27. The investigation found that: "[witness] testimony supports that Mr. Confer's behavior was inappropriate and considered harassment of a fellow employee in violation of the company rules."

28. Instead of being terminated for violating company policies, Mr. Confer was retained by Defendant as an employee due to his "long standing service with the company." Mr. Confer signed a Last Chance Agreement with Defendant and returned to work in August 2014. As part of the Agreement, Mr. Confer was to be "terminated immediately" if Mr. Confer was involved in another charge of harassment.

29. Upon returning to work, Mr. Confer was transferred to a different work area during what Defendant referred to as a "cooling off" period.

30. In January 2015, Mr. Confer returned to C Door.

31. Upon his return to C Door, his harassment of Plaintiff continued, and Plaintiff continued to make complaints about the pervasive harassment she endured. In response to her complaints, Joe Stoner, Foreman, told Plaintiff that "he didn't want to hear about last year and that situation was over and done." Despite the harassment continuing, Defendant never terminated Mr. Confer's employment.

32. The home office staff, located in a different building from the shipping department, stated that there was "drama" in the shipping department because "there is a woman up there."

33. Larry Dias, Truck Driver, warned Plaintiff that her name was on a list of employees targeted for termination.

34. Plaintiff repeatedly asked Mr. Confer directly to stop his harassing behavior. When asked, Mr. Confer would laugh. When a male worker asked someone, including Mr. Confer, to stop harassing behavior towards them, Mr. Confer's behavior ceased. It was common practice for the male coworkers to use physical force to stop unwanted behavior. Plaintiff could not use such force as a female. Plaintiff's male coworkers told her that they were not intimidated by her or compelled to stop harassing her because she is a female.

35. Mr. Confer stated to Chuck Lucas, Shipper, that he would "make it so miserable there that she'll want to quit." He also stated, "let her keep going upstairs and maybe they'll get sick of her whining and get rid of her." This made Plaintiff fearful of losing her job.

36. As a result of the harassment and fabrications of truth by Confer and other male coworkers, Plaintiffs reputation and heath was detrimentally affected. The harassment caused Plaintiff to suffer from elevated anxiety, fear, and depression, for which she had to seek treatment.

37. On July 16, 2015, Plaintiff filed Pennsylvania Human Rights Commission ("PHRC") Case. No 201404820 alleging harassment and discrimination because of her sex (female). This complaint was dual filed with the EEOC.

**Actions Leading to the Filing of the Second EEOC/PHRC Complaint**

38. After filing her complaint, Plaintiff continued to be harassed and discriminated by Mr. Confer and her male coworkers because of her sex. Defendant also began to retaliate against Plaintiff for engaging in protected activities under Title VII and the PHRA.

39. Plaintiff made complaints regarding her sex-based harassment to Mike Hariscik, Mr. Bosley, Mr. Bishop, Mr. Ross, Leslie Monteleone (Manager, Human Resources), Mark Hill, Mr. Bontempo, Dave Weatherhold, Mr. Stoner, and all her foremen.

40. On or about January 5, 2016, Mr. Confer aggressively entered the office, and in the presence of Gary Kane, Shipper, hit Plaintiff with his lunch box. Had Plaintiff not put her hands up, Mr. Confer would have hit her in the face.

41. On or about the same time, Mr. Confer threw away Mr. Merchant's calendar. On information and belief, Mr. Confer threw away the calendar because he thought that it belonged to Plaintiff.

42. On or about the week of February 8, 2016, Mr. Confer walked into the office and yet again purposely hit Plaintiff again with his lunch box. Plaintiff reported the lunch box incidents to Mr. Ross on or about February 11, 2016. Mr. Ross and Ed Johnson discussed the lunch box incidents with Plaintiff on February 16, 2016. Mr. Confer was never disciplined for the lunch box incidents, and he remained employed by Defendant.

43. At one point in the midst of the harassment of Plaintiff, someone taped a picture of pornography to Plaintiff's work locker. Pornography was not taped to any other lockers near Plaintiff's locker.

44. On April 12, 2017, Plaintiff's doctor, Scott Morgan, wrote a letter, notifying Defendant that she was "suffering from situational anxiety form an ongoing issue at her job." The note stated that she required medication to get through the workday when Plaintiff worked with a particular individual and that this need for medication had been an ongoing situation since October 13, 2015. The medication did not interfere with her cognition or her ability to operate a crane.

45. On multiple occasions between the filing of her PHRC complaint and 2018, Defendant verbally warned Plaintiff regarding dress code and/or safety violations. Plaintiff was told to wear her hair up, wear OSHA specific glasses instead of her own scripts, and to not wear her wedding band.

46. Upon information and belief, other male employees were not disciplined for leaving their hair down (Mike Ashby, Shipping Stocker), wearing wedding bands (including Ed Kinkad, coworker, and Sam Harkless, Lead Shipper), or wearing their own script glasses instead of the specific OSHA glasses (including Mr. Confer). Terry Evans, Shipper, was also not disciplined for not wearing his uniform shirt during all of July 2017.

47. In July 2016, Plaintiff called a foreman to inform him that some coils were not bound. Mr. Ross issued her a written warning for "poor workmanship" and failing "to chain double stacked coils," despite Plaintiff being the one who informed the foreman that they were not bound when she discovered the coils towards the beginning of her shift and that Plaintiff was not the employee who failed to bind the coils. No one else, including the individual(s) who should have bound the coils on the prior shift, was disciplined for this incident.

48. Not only was Plaintiff disciplined when she reported discovery of coils not bound by a prior shift, she was also disciplined when she failed to discover that coils were not bound by a prior shift.

49. On June 9, 2017, Plaintiff used a crane to load coils onto a truck. Because the prior shift did not chain and bind the stack, the coils shifted as the Plaintiff lifted them up, causing them to slip off and hit the ground, damaging them in the process. She was written up and suspended for a day after an investigation, undertaken by Rob Bartel, Mr. Ross, and Mr. Hill, which determined that Plaintiff was at fault for not checking that the coils were chained and for not immediately reporting the incident. No one on the prior shift was disciplined for failing to secure the coils.

50. On or about July 19, 2017, Mr. Hill requested a disciplinary meeting with Plaintiff, alleging that she left C Door prior to seeing her relief on July 13, 2017. Mr. Hill's intent was to suspend Plaintiff for three days.

51. While the investigation resulted in the finding that Plaintiff was not in violation, upon information and belief, when a male employee left B Door prior to seeing his relief he was not subjected to a disciplinary meeting or investigation. Additionally, on or about July 19, 2017, Mr. Ashby left before seeing his relief and was not subjected to a disciplinary meeting or investigation. When Plaintiff asked Mr. Bartel if anyone else was "in trouble" for leaving their door without seeing their relief, he replied "No."

52. Defendant's disciplinary actions against Plaintiff only began after she filed her PHRC Complaint.

53. Plaintiff believed Mr. Hill was attempting to fabricate a case against her in order to terminate her employment.

54. Other employees in violation of the same policies Defendant accused Plaintiff of violating, but who did not file a PHRC complaint and are male, were never subject to any discipline.

55. On July 19, 2017, Plaintiff requested paid Family and Medical Leave ("Leave") beginning on July 24, 2017 due to her own serious health conditions. Plaintiff requested Leave because she was "suffering from situational anxiety and panic attacks from an ongoing issue at work." The hostile environment, including Mr. Confer's harassment and management's treatment of the same, was the ongoing issue at work.

56. On September 21, 2017, Plaintiff was diagnosed with "Adjustment Disorder with Mixed Depression and Anxiety." Her doctor advised Defendant that she should not return to work

until her medication was adjusted. Plaintiff was not given the okay to return to work until November 6, 2017.

57. In addition to Plaintiff' complaint against Defendant, she filed a complaint to Defendant and her Union on October 5, 2017 regarding Mr. Confer's continued harassing behavior.

58. Defendant formed a Civil Rights Committee to investigate. The Committee published its findings on December 1, 2017, describing the Plaintiff as follows: "All indicated that Sherry's work performance was good, the supervisors of that area indicated that she does well, keeps herself busy and the housekeeping is good."

59. On May 29, 2018, Plaintiff filed her second complaint, PHRC No. 201700520, alleging retaliation and discrimination. It was dual filed with the EEOC.

**Actions Leading to Filing Third EEOC/PHRC Complaint**

60. After Plaintiff filed her second EEOC/PHRC complaint, Defendant continued to harass, discriminate, and retaliate against her because of her sex.

61. On September 17, 2018, Plaintiff was escorted to an upstairs office, where a Joint Civil Rights Committee was present. The following individuals were present: Tim Yesko, Mr. Bartel, Daniel Jones, Joel Kitch, Tom Taborek, Bill Bensen, and Ms. Monteleone.

62. Plaintiff was informed that she was being accused of harassment by Dave Steiner, who upon information and belief did not file a PHRC complaint.

63. According to Defendant, Mr. Steiner alleged that an interaction occurred in May 2018 between he and Plaintiff. Someone had placed coils the night before which prevented Mr. Steiner from being able to get by in his truck. Mr. Steiner cursed at Plaintiff and accused her of intentionally placing the coils in his way.

64. On September 20, 2018, Plaintiff was escorted off Defendant's premises after being informed that she would be suspended for five days pending termination.

65. On September 26, 2018, Defendant held a suspension and discharge meeting. Present for the Defendant was Paul Downey, Elizabeth Lutty, and Ms. Monteleone. In addition, Plaintiff was present, as well as two individuals from her Union, Mr. Yesko and Nick Fox.

66. On September 28, 2018, Ms. Monteleono called Plaintiff, informing her that she was terminated for:

   a. Creating a hostile work environment;

   b. Falsification/misrepresentation of information;

   c. Coercing fellow employees, harassment, and interfering with other employees on their jobs;

   d. Failure to report an accident or near miss; and

   e. Insubordination.

67. Compared to Mr. Confer's treatment based on his "long standing service to the company" which garnered him a Last Chance Agreement, Plaintiff's fifteen years of service to the company meant nothing to Defendant.

68. On March 13, 2019, Plaintiff filed PHRC No. 201800778 alleging retaliation in response to Defendant suspending Plaintiff and terminating her employment for opposing Defendant's unlawful employment practices. It was dual filed with the EEOC.

## CAUSES OF ACTION

### Count I
### (Sexual Harassment in Violation of Title VII)

69. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

70. 29 C.F.R. § 1604.11(a), states in relevant part:

[h]arassment on the basis of sex is a violation . . . of [T]itle VII. . . . [V]erbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

71. Defendant's unlawful actions against Plaintiff, including Mr. Confer's harassment of Plaintiff, were of a sexual nature and were aimed at Plaintiff because of her sex, subjecting Plaintiff to harassment and a hostile work environment.

72. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile, intimidating, or offensive.

73. Plaintiff was detrimentally affected by the above-described conduct, including Mr. Confer's harassment of Plaintiff, because Plaintiff believed her work environment to be hostile or abusive.

74. Defendant knew, or should have known, of Mr. Confer's conduct and failed to take prompt, remedial action to stop his conduct.

75. As such, Defendant violated 42 U.S.C. § 2000e, *et. seq.* and 29 C.F.R. § 1604.11 by subjecting Plaintiff to sufficiently severe and/or pervasive harassment because of her sex, failing to immediately take corrective action, and from failing to take all steps necessary to prevent sexual harassment from occurring.

76. In unlawfully subjecting Plaintiff to sexual harassment, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

77. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### Count II
### (Sex Discrimination in Violation of Title VII)

78. Plaintiff incorporates by reference the above paragraphs as set forth separately herein.

79. Title VII, 42 U.S.C. § 2000e-2(a), states in relevant part: "[i]t shall be an unlawful employment practice for an employer to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."

80. Defendant unlawfully discriminated against Plaintiff because of her sex by subjecting Plaintiff to less favorable terms and conditions of her employment by imposing heightened and/or disproportionate discipline on Plaintiff as compared to her male coworkers.

81. As such, Defendant's above-described conduct constituted discrimination based on Plaintiff's sex (female) in violation of Title VII.

82. In unlawfully subjecting Plaintiff to sex discrimination, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

83. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

## Count III
**(Retaliation in Violation of Title VII)**

84. Plaintiff incorporates by reference the above paragraphs as set forth separately herein.

85. Title VII, 42 U.S.C. § 2000e-(3)(a), states in relevant part that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual, . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner of investigation, proceeding or hearing under this subchapter."

86. Plaintiff engaged in activities protected by Title VII on multiple occasions. She specifically opposed Defendant's unlawful and discriminatory practices under Title VII by submitting verbal and written complaints to management multiple times about Mr. Confer's harassment, by submitting written complaints to the EEOC about Mr. Confer's harassment and management's failure to take any action to prevent it, and by submitting written complaints to the EEOC about Defendant's retaliatory actions in response to her filing her complaint.

87. As such, Plaintiff's opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 42 U.S.C. § 2000e, *et. seq*.

88. Defendant unlawfully retaliated against Plaintiff and subjected her to further harassment because she engaged in the above-described statutorily protected activity. Defendant failed to take corrective action that would prevent Plaintiff from being subjected to further harassment, subjected Plaintiff to heightened and/or disproportionate discipline for conduct her male workers were not disciplined for, and ultimately suspended and terminated Plaintiff's employment for lodging her complaints.

89. A casual connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

90. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

91. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### Count IV
### (Sexual Harassment in Violation of the PHRA)

92. Plaintiff incorporates by reference the above paragraphs as though set forth separately herein.

93. The PHRC Guidelines on Sexual Harassment state, in relevant part:

[h]arassment on the basis of sex is a violation . . . of the [PHRA] . . . . [V]erbal or physical conduct of a sexual nature constitute sexual harassment when . . . such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

94. Defendant's unlawful actions against Plaintiff, including Mr. Confer's harassment of Plaintiff, were of a sexual nature and were aimed at Plaintiff because of her sex, subjecting Plaintiff to harassment and a hostile work environment.

95. Defendant's conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile, intimidating, or offensive.

96. Plaintiff was detrimentally affected by the above-described conduct occurred, including Mr. Confer's harassment of Plaintiff, because Plaintiff believed her work environment to be hostile or abusive.

97. Defendant knew or should have knew of Mr. Confer's conduct and failed to take prompt, remedial action to stop his conduct.

98. As such, Defendant violated 43 PA. C.S.A. § 951, *et. seq.* by subjecting Plaintiff to sufficiently severe and/or pervasive harassment because of her sex, failing to immediately take corrective action, and from failing to take all steps necessary to prevent sexual harassment from occurring.

99. In unlawfully subjecting Plaintiff to sexual harassment, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

100. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorney's fees and costs pursuant to 43 PA. CONS. STAT. §962.

**Count V**
**(Sex Discrimination in Violation of the PHRA)**

101. Plaintiff incorporates by reference the above paragraphs as set forth separately herein.

102. The PHRA, Pa. Cons. Stat § 955(a), states in relevant part:

[i]t shall be an unlawful discriminatory practice for any because of . . . sex . . . to otherwise discriminate against such individual . . . with respect to compensation, hire, tenure, terms conditions, or privileges of employment . . . if the individual . . . is the best able and most competent to perform the services required.

17

103. Defendant unlawfully discriminated against Plaintiff because of her sex by subjecting Plaintiff to less favorable terms and conditions of her employment by imposing heightened and/or disproportionate discipline on Plaintiff as compared to her male coworkers.

104. As such, Defendant's above-described conduct constituted discrimination based on Plaintiff's sex (female) in violation of the PHRA.

105. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

106. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorney's fees and costs pursuant to 43 Pa. Cons. Stat. §962.

### Count VI
### (Retaliation in Violation of the PHRA)

107. The PHRA, 43 Pa. Cons. Stat. § 955(d), states in relevant part that it shall be unlawful for an "employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding or hearing under this act."

108. Plaintiff engaged in activity protected by the PHRA on multiple occasions. She specifically opposed Defendant's unlawful and discriminatory practices under the PHRC by submitting verbal and written complaints to management multiple times about Mr. Confer's harassment, by submitting written complaints to the PHRC about Mr. Confer's harassment and

management's failure to take any action to prevent it, and by submitting written complaints to the PHRC about Defendant's retaliatory actions in response to her filing these complaints.

109. As such, Plaintiff's opposition and complaints regarding Defendant's illegal practices were protected activities within the meaning of 43 PA. CONS. STAT. § 955(d), *et. seq*.

110. A casual connection exists between Plaintiff's protected activities and Defendant's unlawful retaliation.

111. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

112. In unlawfully discriminating and retaliating against Plaintiff, Defendant acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, therefore necessitating the imposition of exemplary damages.

113. As a result of Defendant's above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, and is thus entitled to general and special damages and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorney's fees and costs pursuant to 43 Pa. Cons. Stat. §962.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment as follows:

a. A declaratory judgment that the Defendant's actions are unlawful and violate 42 U.S.C. §§ 2000e, *et seq*.; and 43 PA. C.S.A. §951, *et seq*.;

b. Back pay (including interests and benefits);

c. Front pay (including interests and benefits);

  d. Compensatory damages sustained as a result of Defendant's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish.

  e. Punitive damages in an amount commensurate with Defendant's ability to pay and to deter future unlawful conduct;

  f. Payment of costs of suit;

  g. Payment of reasonable attorneys' fees; and

  h. The provision of whatever other relief the court deems just, equitable, and appropriate.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Date: March 2, 2021

               Respectfully Submitted,

               */s/ Elizabeth Pollock-Avery*
               Elizabeth Pollock Avery
               **Carlson Lynch, LLP**
               1133 Penn Avenue, 5th Floor
               Pittsburgh, PA 15222
               Phone: (412) 322.9243
               eavery@carlsonlynch.com

               *Counsel for Plaintiff*